IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

JUN 3 0 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| PILAR SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 1:07cv1162 |
| | ) | |
| NCI INFORMATION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM ORDER

THIS MATTER is before the Court on Plaintiff Pilar
Services' ("Pilar") and Defendant NCI Information Systems'
("NCI") cross Motions for Summary Judgment.  NCI has a prime
contract with the National Security Agency ("NSA") in which NCI
provides information technology services.  (Def.'s Br. Supp.
Mot. Summ. J. 1).  Pilar, a subcontractor, provides services to
NCI in support of NCI's prime contract.  *Id.*  This matter
concerns allegations that NCI failed to pay Pilar Services
$100,300.00 for computer software Pilar provided NCI's
government customer, the NSA.  There are four issues before the
Court.  First, whether the provisions of the parties'
subcontract or the Virginia Uniform Computer Information
Transactions Act ("UCITA") governs the terms of the software
transactions between NCI and Pilar.  Second, if the Court

1

determines that the provisions of the parties' subcontract
governs the software transaction, whether the subcontract's
"pay-if-paid" clause is applicable.  Third, whether Pilar has
suffered any actual damage.  Finally, whether Pilar can recover
under the equitable remedies of unjust enrichment or quantum
meruit.

The Court denies Pilar's Motion for Summary Judgment, and
grants NCI's Motion for Summary Judgment, because the parties'
subcontract governs the terms of the transactions between NCI
and Pilar, the subcontract's pay-if-paid clause is applicable,
Pilar has not suffered any actual damage, and Virginia law
prohibits recovery under the equitable theories of quantum
meruit and unjust enrichment where an enforceable contract
exists.

## I.   **BACKGROUND**

Plaintiff, Pilar Services, Inc. ("Pilar"), is a Nevada
corporation with a principal place of business in Maryland.
(Compl. ¶ 1).  Defendant, NCI Information Systems, Inc.  ("NCI")
is a Virginia corporation.  *Id.* at 2.  NCI has a contract with
the National Security Agency ("Government" or "NSA") in which
NCI is the prime contractor.  (Stat. Undis. Facts ¶ 2).  NCI and
Pilar entered into a written subcontract agreement on or about
April 27, 2005.  *Id.*  The subcontract between NCI and Pilar
states that Pilar "shall, pursuant to the terms and conditions

specifically set forth herein, provide services as ordered under this subcontract to support the Prime in its performance of the Program as detailed in individual Technical Task Orders (TTOs) issued in support of Attachment A, hereto, Subcontractor Statement of Work." *Id.* at 4. The subcontract also states that the "[S]ubcontractor shall not be paid for any work under this Subcontract or any TTO unless or until prime contractor receives payment from its Customer from its work performed by Subcontractor." (Def.'s Ex. 2 at § G-2.4).

In addition to the IT services Pilar provides NCI pursuant to the subcontract, Pilar is a reseller of a software program named "Cicero." Cicero is produced by Level 8 Systems, Inc. ("Level 8"). *Id.* at 3. In June 2006, Pilar's CEO, Charles Porciello, marketed Cicero to a NSA employee, Ms. R, and Gregory M. Broussard, a NSA contractor. *Id.* at 8-9. Porciello had at least two other phone conversations with another NSA employee to discuss Cicero. *Id.* at 11. Porciello proposed to NSA that it purchase a 90-day technical evaluation license for Cicero. *Id.* at 12. NCI was not aware of these contacts. (Def.'s Br. Supp. Mot. Summ. J. 3)

On or about July 12, 2006, after NSA indicated some interest in the Cicero software, Pilar recommended that NSA procure Cicero through its existing prime contract with NCI. *Id.* at 15. Pilar provided NSA with its demonstration copy of

3

Cicero in order for NSA to perform the security cleaning and administrative paperwork required to deliver the software to NSA. *Id.* at 17. On or about August 23, 2006, Pilar representatives met with NSA to discuss the Cicero software. *Id.* at 18. NCI was not informed of this meeting. *Id.* On or about September 6, 2006, NSA authorized NCI to purchase Cicero from Pilar. *Id.* at 20. On September 11, 2006, NCI created a work order pursuant to the subcontract stating that "Level 8's Cicero software is required for this task. Requirements are: Two (2) Cicero Software Developer Kit (SDK) Licenses [and] Ten (10) Cicero Run-[T]ime Licenses." *Id.* at 24.

Pilar encountered difficulty in obtaining NSA's assent to a license agreement for Cicero. (Def.'s Br. Supp. Mot. Summ. J. 4). NSA never executed the Cicero end-user license agreement Pilar provided. (Stat. Undis. Facts ¶ 28). The 90-day term of use of Cicero, as stated in the license agreement, never started. *Id.* at 29. Pilar told NSA that it either had to sign the license agreement for the use of Cicero, or de-install and destroy the software. *Id.* at 30. NSA chose to de-install and destroy the software. On or about October 18, 2006, NSA sent Pilar a signed and executed "Cicero De-Install Certificate" affirming that the Cicero software had been de-installed and that any copies of the software had been destroyed. *Id.* at 31.

4

On or about November 28, 2006, NCI removed Cicero from its purchase order to Pilar. *Id.* at 32. Soon thereafter, NCI wrote a letter NSA requesting payment. NSA responded to NCI's request, and continues to take the position that: (1) the Cicero software supplied to it was a 90-day "free trial" for test and evaluation, (2) that it is not liable to Pilar for the cost of the software, and (3) that no funding will be provided to NCI for the payment of the software. *Id.* at 34. Pilar never paid Level 8 any money for the Cicero software at issue in this case, but Pilar did incur a liability of $100,300.00 as an accounts payable on its balance sheet. *Id.* at 37; (Pl.'s Br. Opp'n Def. Mot. Summ. J. 9).

Pilar brought suit against NCI seeking to recover the cost of the software under breach of contract, quantum meruit, and unjust enrichment theories. Both Pilar and NCI now move the Court to enter summary judgment in its favor.

## II. DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories,

and admissions on file, designate specific facts showing that
there is a genuine issue for trial. *Celotex Corp. v. Catrett*,
477 U.S. 317, 324 (1986).

**B.   Analysis**

The Court denies Pilar's Motion for Summary Judgment and
grants NCI's Motion for Summary Judgment because: (1) the
subcontract, not the UCITA, governs the terms of the software
transaction, (2) the subcontract's pay-if-paid clause is
applicable to the software transaction, and (3) Pilar has not
suffered actual damages.   Furthermore, Pilar cannot recover
under the equitable theories of quantum meruit and unjust
enrichment because Virginia Law prohibits recovery under these
theories when a valid contract is present.

**1. *Law governing the Software Transaction.***

The Court holds that the parties' subcontract governs the
software transaction, per the direction of the UCITA, because
the UCITA provides that individual parties may decide on the
specific terms of the contract.

Pilar contends that NCI is liable for the costs of the
Cicero software because the UCITA bars the usage of the terms,
including the pay-if-paid clause, laid out in the subcontract.
NCI, however, asserts that the software transaction is
encompassed by the parties' subcontract.   The "[Uniform Computer
Information Transaction Act] applies to computer information

7

transactions." VA. CODE. ANN. § 59.1-501.3. A computer information transaction is defined as "an agreement or the performance of it to create, modify, transfer, or license computer information or informational rights in computer information." VA. CODE. ANN. § 59.1-501.2(11). Computer information is defined as "information in electronic form or through the use of a computer or that is in a form capable of being processed by a computer." VA. CODE. ANN. § 59.1-501.2(10). Information is defined as "data, text, images, sounds, mask works, or computer programs." VA. CODE. ANN. § 59.1-501.2(35). A computer program is "a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result." VA. CODE. ANN. § 59.1-501.2(12).

Virginia courts have yet to interpret this statute, but the language is unambiguous. Given that Cicero is a computer software program, and since computer software falls within the definition of information, the Cicero transaction falls within the purview of the UCITA statute. The UCITA provides, however, that "the parties in their agreement may choose the applicable law." Va. Code. Ann. § 59.1-501.9. Here, Pilar's CEO, Charles Porciello, states in his deposition that both Pilar and NCI agreed to use the terms of the subcontract to govern the parties' relationship. (Def.'s Ex. 1 67:20-68:1). Therefore, the provisions of the parties' subcontract, and not the default

rules of the UCITA, govern the Cicero software transaction
between Pilar and NCI.

### 2. *Pay-if-Paid Clause*.

The Court holds that the subcontract's pay-if-paid clause
is a valid defense that bars Pilar from recovery of its breach
of contract claim.  The Virginia Supreme Court has held that if
both a contractor and a subcontractor manifest an intent for the
"pay-if-paid" defense to be available, then the defense acts as
an absolute defense. *Galloway Corp. v. S.B. Ballard Constr. Co.*,
464 S.E.2d 349, 355 (Va. 1995).  The availability of the pay-if-
paid defense does not dispense the obligations of acting in
good-faith.  VA. CODE. ANN. § 59.1-501.15(b)(1).  In *Galloway*, the
Court held that because the defendant was in a position to
change the contract before both parties agreed to it, and the
defendant chose not to do so, the contract was to be construed
in favor of the pay-if-paid clause.  *Galloway*, 464 S.E.2d at
356.

In this case, nothing in the record demonstrates that Pilar
expressed concern over the pay-if-paid clause or otherwise
objected to its inclusion in the subcontract.  This is analogous
to Galloway because Pilar was in a position to change the
contract before both parties agreed, but they chose not to do
so.  Moreover, NCI sent a letter to NSA asking it to investigate
its liability for the Cicero software and licenses.  (Def.'s Ex.

9

15 at 2).  The letter also asked that, if NSA discovered that it
was liable for the cost of the software, it pay the amount due.
*Id.*  NSA took the position that the Cicero software supplied was
a 90-day "free trial" for test and evaluation, that it was not
liable to Pilar for the cost of the software, and that no
funding will be provided to NCI for the payment of the software.
*Id.* at 34.  NCI took all of the necessary steps to fulfill the
good-faith requirement despite NSA's negative response.
Therefore, the pay-if-paid clause is enforceable.

Pilar further contends that even if the pay-if-paid clause
does apply, it is still not applicable to the software
transaction because the clause only applies to "work," and the
price of the software is a "cost."  (Pl.'s Reply Mem. Supp. Mot.
Summ. J. 6-7).  The Court does not agree.  The Cicero Statement
of Work provides that the contractor will support the evaluation
of Cicero and specifically states that Cicero Software will be
needed for this task.  There are numerous references throughout
the statement of work regarding the use of the Cicero software
and its necessity to the contractor.  (Def.'s Ex. 10).  These
numerous references demonstrate that the parties intended to
include the cost of the Cicero software to be categorized as
"work."

Because NCI has not received payment from NSA for the
Cicero software, and therefore, NCI has not breached the

10

parties' subcontract.  Accordingly, Defendant's Motion for Summary Judgment with respect to the breach of contract claim is granted and Pilar's Motion for Summary Judgment is denied.

### 3. Damages

Alternatively, even if the Court were to hold that the UCITA governs the software transaction and the pay-if-paid clause does not apply, the Court denies Pilar's Motion for Summary Judgment and grants NCI's Motion for Summary Judgment because Pilar has not suffered actual damages.  A breach of contract claim requires proof of actual damages.  *Carley Capital Group v. Newport News*, 709 F. Supp. 1387, 1396 (E.D. Va. 1989) (stating that "[I]n order to recover for a breach of contract . . . plaintiffs must prove by a preponderance of the evidence . . . that the breaches are the cause of actual damages to the plaintiff").  Pilar supplied NSA with a demonstration copy of Cicero which was given to Pilar at no cost by Level 8 (Def. Stat. Undis. Facts 14, 17). Pilar forwarded a Cicero end-user license agreement to NSA, but NSA never executed the end-user license agreement. Subsequently, NCI changed the purchase order to reduce the quantity of Cicero from "1" to "0".  Pilar asked NSA to either pay for the software or de-install and destroy all things Cicero related in their possession, NSA chose the latter. No damage to Pilar has occurred.

11

Pilar contends that it has been damaged by NCI's refusal to pay for the Cicero software because it incurred a $100,300 accounts payable on its balance sheet. (Pl.'s Br. Opp'n Def. Mot. Summ. J. 9). However, Porciello states in his deposition that Pilar and Level 8 have an understanding that Pilar has no obligation to pay Level 8 until it has collected from NCI. (Def.'s Ex. 1 at 59.17-60:4).

Accordingly, Pilar did not suffer actual damages caused by NCI and they cannot recover under breach of contract. NCI's Motion for Summary Judgment with respect to the breach of contract claim is granted and Pilar's Motion for Summary Judgment is denied because even if the UCITA governs, Pilar has not suffered actual damages.

### 4. Equitable Remedies

The Court denies Pilar's Motion for Summary Judgment with respect to its quantum meruit and unjust enrichment claims, and grants NCI's Motion for Summary Judgment because both equitable remedies bar recovery if the parties have an express contract. "Where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie." *WRH Mortg., Inc. v. S.A.S. Associates*, 214 F.3d 528, 534 (4th Cir. 2000). Further, "Virginia law provides no relief under a quantum meruit claim where a valid, express contract exists between the parties."

*Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006).  Pilar cannot recover under unjust enrichment or quantum meruit because NCI and Pilar have a contractual relationship.  Therefore, NCI is not liable under either unjust enrichment or quantum meruit and NCI's Motion for Summary Judgment with respect to the unjust enrichment and quantum meruit claims is granted and Pilar's Motion for Summary Judgment with respect to the unjust enrichment and quantum meruit claims is denied.

## III. CONCLUSION

The Court holds that because the subcontract governs the terms of the software transaction between Pilar and NCI, the pay-if-paid clause is applicable, Pilar Services had not been damaged by NCI, and the equitable remedies of unjust enrichment and quantum meruit are not applicable under Virginia Law, Plaintiff Pilar Services' Motion for Summary Judgment is denied and Defendant NCI Information Systems' Motion for Summary Judgment is granted.

For the reasons stated above, it is hereby

ORDERED that Plaintiff Pilar Services' Motion for Summary Judgment is DENIED.  It is further

ORDERED that Defendant NCI Information Systems' Motion for Summary Judgment is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.

ENTERED this *30* day of June, 2008.

/s/
Gerald Bruce Lee
United States District Judge

Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
6/*30*/08

14